[Cite as *Shannack v. Yark Automotive Group, Inc.*, 2021-Ohio-2372.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Iyad Shannak                                              Court of Appeals No.  L-21-1027

     Appellant                                          Trial Court No.  CI0202003331

v.

Yark Automotive Group, Inc.                    **DECISION AND JUDGMENT**

     Appellee                                              Decided:  July 9, 2021

* * * * *

Joseph B. Clarke and Brianna L. Stephan, for appellant.

G. Opie Rollinson, Michael A. Gonzalez, and Anthony L.
Hunter, for appellee.

* * * * *

**MAYLE, J.**

{¶ 1} In this accelerated appeal, plaintiff-appellant, Iyad Shannak, appeals the

February 1, 2021 judgment of the Lucas County Court of Common Pleas, granting

judgment in favor of defendant-appellee, Yark Automotive Group, Inc.  For the following

reasons, we affirm the trial court judgment.

## I. Background

{¶ 2} On December 2, 2017, after working with sales representatives for two-and-a-half months, Iyad Shannak purchased a 2018 Dodge Ram 1500 from Yark Automotive Group for use in his business, Summit Auto Hauling, LLC. According to Shannak's complaint, it was understood that he was purchasing the vehicle for business use and sales representatives helped him select the vehicle best suited to those needs. Shannak financed the vehicle, and Yark facilitated the purchase of additional insurance and warranty products.

{¶ 3} Among that additional insurance, Yark prompted Shannak to purchase Guaranteed Auto Protection ("GAP") and represented to him that this protection would insure the remaining balance of his vehicle loan and also pay off any comprehensive deductible in the event of the total loss of the vehicle. Relying on Yark's representations that the GAP would provide coverage in the event of a total loss, Shannak opted into the GAP and executed a deficiency waiver addendum (collectively, "the GAP agreement"). The GAP coverage was provided and administered by Safe-Guard Product International.

{¶ 4} On July 7, 2020, an employee of Summit Auto was driving the 2018 Dodge Ram 1500 and was involved in an accident. The vehicle was totaled. Shannak filed a claim with his insurance company and received an insurance settlement of $14,497.89. This left an outstanding balance on the vehicle loan of $31,221.31. Shannak filed a claim under the GAP agreement for payment of the outstanding balance, but he was denied coverage under a "commercial use" exclusion contained in the agreement.

2.

**{¶ 5}** Shannak filed a complaint on October 16, 2020, alleging fraud, fraud in the inducement, misrepresentation, and negligent misrepresentation (Count I), breach of express warranty (Count II), breach of implied warranty for a particular purpose (Count III), and violation of Ohio's Consumer Sales Protection Act (Count IV). Yark Automotive Group filed an answer and a motion for judgment on the pleadings under Civ.R. 12(C).

**{¶ 6}** In its motion for judgment on the pleadings, Yark argued that Shannak's first claim fails because the parol evidence rule bars the admission of extrinsic evidence that varies or contradicts the terms of a written agreement, so Shannak's reliance on the alleged statements by Yark sales representatives was not justifiable and was unreasonable. It argued that Shannak's second and third claims fail because warranties for the GAP agreement are not available under Ohio law and were disclaimed by Yark. And it argued that Shannak's fourth claim fails because he did not timely bring a claim under the CSPA and no such claim is available.

**{¶ 7}** Shannak responded that an exception to the parol evidence rule exists where fraud is alleged and where, as here, he does not seek to vary the terms of the agreement. He insisted that justifiable reliance is a question of fact, requiring inquiry into the relationship of the parties. He argued that R.C. Chapter 1302 applies to mixed contracts for goods and services and here, the foremost transaction was the purchase of the truck. He maintained that the disclaimer statement in the retail purchase agreement may not be considered in deciding Yark's motion because it was attached to Yark's motion—not to

3.

the pleadings. And he argued that his claims under the CSPA were properly alleged in the alternative, and questions of fact remain as to whether the transaction here was one primarily for personal, family, or household purposes.

{¶ 8} The trial court granted Yark's motion. It held that the GAP agreement specifically disclaimed coverage for commercial use, and one who is competent to contract who signs a written agreement without reading it is bound to its terms and cannot avoid its consequences by asserting detrimental reliance based on others' representations. The court concluded that because the GAP agreement does not constitute "goods," Shannak's warranty claims fail, and the CSPA is inapplicable because the truck, and the attendant GAP agreement, was not purchased for "primarily personal, family, or household purposes" under R.C. 1345.01.

{¶ 9} Shannak appealed. He assigns the following error for our review:

> The trial court erred in granting Appellee's Motion for Judgment on the Pleadings pursuant to Ohio Civ. R. 12(C) as Appellant's Complaint stated viable and specific claims for fraudulent inducement and negligent misrepresentation.

## II. Law and Analysis

{¶ 10} Shannak argues that the trial court erred in granting Yark's motion for judgment on the pleadings with respect to his principal claims of fraudulent inducement and negligent misrepresentation. He maintains that a question of fact exists whether he justifiably relied on the false and misleading claims that Yark representatives made

4.

regarding coverage under the GAP policy sold to him. He emphasizes that the allegedly fraudulent—or alternatively, negligent—misrepresentations were made before he signed the GAP policy, therefore, they concern the execution of the agreement, not its terms. Shannak does not challenge the dismissal of his remaining claims.

{¶ 11} Yark responds that the GAP agreement contains an acknowledgement that he read and agreed to its terms and contains a clear and ambiguous exclusion for vehicles used for commercial purposes. It maintains that given the clear terms of the GAP agreement, Shannak is unable to establish that he reasonably and justifiably relied on any alleged representations by Yark's representatives. It insists that the failure to read the terms of the GAP agreement before executing it is fatal to his fraud claim. Yark also argues that to the extent the factual allegations in the complaint are inconsistent with the terms of the written instrument at issue, the court need not accept his allegations as true and must instead accept the facts set forth in the agreement as true.

{¶ 12} Under Civ.R. 12(C), "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." In considering a Civ.R. 12(C) motion, the trial court may review only "the complaint and the answer as well as any material incorporated by reference or attached as exhibits to those pleadings." *Walker v. City of Toledo*, 2017-Ohio-416, 84 N.E.3d 216, ¶ 19 (6th Dist.). Employing the same standard as a Civ.R. 12(B)(6) motion for failure to state a claim upon which relief may be granted, the trial court must construe as true the material allegations in the complaint and draw all reasonable inferences in favor of the nonmoving

party.  *Id.* at ¶ 18, citing *McMullian v. Borean*, 167 Ohio App.3d 777, 2006-Ohio-3867, 857 N.E.2d 180, ¶ 7 (6th Dist.); *Ohio Manufacturers' Assn. v. Ohioans for Drug Price Relief Act,* 147 Ohio St.3d 42, 2016-Ohio-3038, 59 N.E.3d 1274, ¶ 10, citing *Rayess v. Educational Comm. for Foreign Med. Graduates,* 134 Ohio St.3d 509, 2012-Ohio-5676, 983 N.E.2d 1267, ¶ 18.  If it appears from the pleadings and the materials incorporated by reference or attached as exhibits that the nonmoving party can prove no set of facts entitling it to relief, the trial court may dismiss the plaintiff's claims under Civ.R. 12(C).  *Ohio Manufacturers' Assn.* at ¶ 10.  We review the trial court's judgment de novo.  *Reister v. Gardner*, Slip Opinion No. 2020-Ohio-5484, ¶ 17.

{¶ 13} The parol evidence rule provides that "absent fraud, mistake or other invalidating cause, the parties' final written integration of their agreement may not be varied, contradicted or supplemented by evidence of prior or contemporaneous oral agreements, or prior written agreements." *Galmish v. Cicchini*, 90 Ohio St.3d 22, 27, 734 N.E.2d 782 (2000), quoting 11 Williston on Contracts, Section 33:4, at 569-570 (4th Ed.1999).  It is not a rule of evidence or contract interpretation but, rather, it is "a rule of substantive law which, when applicable, defines the limits of a contract." *Id.*, quoting *Charles A. Burton, Inc. v. Durkee*, 158 Ohio St. 313, 109 N.E.2d 265 (1952), paragraph one of the syllabus.  The parol evidence rule protects the integrity, predictability, and enforceability of written contracts by prohibiting evidence of any purported agreements that are extrinsic to the contract.  *Id.*  "Extrinsic evidence is

6.

excluded because it cannot serve to prove what the agreement was, this being determined as a matter of law to be the writing itself." *Id.*

{¶ 14} "Nevertheless, the parol evidence rule does not prohibit a party from introducing parol or extrinsic evidence for the purpose of proving fraudulent inducement." *Id.* at 28, quoting *Drew v. Christopher Constr. Co., Inc.*, 140 Ohio St. 1, 41 N.E.2d 1018 (1942), paragraph two of the syllabus. Indeed, "it was never intended that the parol evidence rule could be used as a shield to prevent the proof of fraud, or that a person could arrange to have an agreement which was obtained by him through fraud exercised upon the other contracting party reduced to writing and formally executed, and thereby deprive the courts of the power to prevent him from reaping the benefits of his deception or chicanery." *Id.*, quoting 37 American Jurisprudence 2d, Fraud and Deceit, Section 45, at 621-622 (1968) (footnotes omitted).

{¶ 15} The parol evidence rule, however, "may not be avoided 'by a fraudulent inducement claim which alleges that the inducement to sign the writing was a promise, the terms of which are directly contradicted by the signed writing.'" *Id.* at 29, quoting *Marion Prod. Credit Assn. v. Cochran*, 40 Ohio St.3d 265, 533 N.E.2d 325 (1988), paragraph three of the syllabus. Thus, when a party alleges that it has been fraudulently induced to enter a written contract through the other party's misrepresentations of fact, the relevant question is whether the alleged representations directly contradict the signed agreement.

7.

{¶ 16} Here, the deficiency waiver addendum—attached to Shannak's complaint—defines "commercial use/vehicle" as "utilization of the Vehicle for any commercial purpose. A vehicle registered as commercial, to a business or covered by a commercial primary insurance policy shall be deemed commercial." The Exclusions section provides that "[t]his Addendum does not apply to loss of or damage to the Covered Vehicle * * * [t]hat is part of a fleet that is intended for use as a public or livery conveyance or any Commercial Vehicle or vehicle being used for Commercial Use."

{¶ 17} Moreover, the addendum to the GAP agreement contains the following provisions verifying that Shannak read the front and back of the addendum:

I (CUSTOMER), whose signature appears below, acknowledge that the information contained above is, to the best of my knowledge, true. *I have read the front and back of this Deficiency Waiver Addendum in its entirety*; I understand that I am entering into a contractual agreement with the Dealer/Assignee; I agree to all of its provisions, terms and conditions; and I am requesting coverage. * * * (Emphasis added.)

{¶ 18} Shannak's complaint clearly alleges that the Dodge Ram 1500 was intended to be used—and was, in fact, used—for commercial purposes. It further alleges that the vehicle was titled to Shannak and registered with the state of Ohio under Summit Auto, the name of Shannak's business. While Shannak's complaint also alleges that Yark representatives knew of his intended use of the vehicle and nevertheless told him that the GAP agreement provided coverage in the event of a total loss, the inescapable

8.

conclusion we must reach is that those representations directly contradict the plain language of the GAP agreement.

{¶ 19} Shannak emphasizes that the question of justifiable reliance is one of fact and requires inquiry into the relationship between the parties, and we acknowledge that this is generally true. *See Mishler v. Hale*, 2014-Ohio-5805, 26 N.E.3d 1260, ¶ 33 (2d Dist.) ("The question of justifiable reliance is one of fact, and the court must inquire into the relationship between the parties.").[1] But it is also well-established that "[a] person of ordinary mind cannot be heard to say that he was misled into signing a paper which was different from what he intended, when he could have known the truth by merely looking when he signed." (Internal citations and quotations omitted.) *Id.* at ¶ 36. To that end, a plaintiff cannot claim to have justifiably relied on representations that contradict the terms of the written agreement. *Marable v. Michael J. Auto Sales,* 1st Dist. Hamilton No. C-120373, 2013-Ohio-1750, ¶ 11. A genuine issue of material fact does not exist in such a scenario. *Bender v. Logan*, 2016-Ohio-5317, 76 N.E.3d 336, ¶ 53 (4th Dist.).

---

[1] Shannak argues that Yark owed a heightened duty to him because it sold him insurance. Under R.C. 1317.05(B), however, "a debt cancellation or debt suspension product"— which is defined to include a "guaranteed asset protection waiver, guaranteed auto protection waiver, or other similarly named agreement"—"shall not be considered insurance." The cases Shannak cites—*Parker v. Protective Life Ins. Co.,* 11th Dist. Trumbull Nos. 2004-T-0127, 0128, 2006-Ohio-4041, and *Crow v. Fred Martin Motor Co.,* 9th Dist. Summit No. 21128, 2003-Ohio-1293—involved the sale of credit disability insurance policies.

9.

{¶ 20} In *Bender,* the parties entered into several agreements in connection with their establishment of a cosmetology school. The plaintiff admittedly failed to read two of those agreements. The plaintiff alleged that the defendant misrepresented the contents of the agreements and concealed the text of the agreements. The Fourth District concluded that the plaintiff could not prevail on her fraudulent inducement claims because the documents clearly set forth the terms of the agreement. It observed that if she had read the documents, she would have known their true content. *Id.* at ¶ 57-58.

{¶ 21} Another of the agreements the plaintiff signed in *Bender* was an employment agreement that provided that plaintiff would be paid $30,000 per year. She alleged that the parties had agreed that she would be paid $60,000 per year. She noticed the discrepancy and pointed it out to the defendant, and he assured the plaintiff he would correct the salary term. Plaintiff executed the agreement anyway. The defendant did not correct the discrepancy and denied that the parties had agreed to a salary of $60,000. The court agreed with the plaintiff that issues of fact existed whether the defendant falsely made a material representation concerning his intention to correct the discrepancy in the salary term with the intent to mislead the plaintiff into relying upon it. *Id.* at ¶ 60. And the court acknowledged that the parol evidence rule does not prohibit a party from introducing extrinsic evidence to prove fraudulent inducement. It concluded, however, that parol evidence could *not* be introduced under the circumstances because the evidence would contradict the express terms of the signed writing. *Id.* at 61. It held that the plaintiff was unable to establish her fraudulent inducement claim. *See also Chase Home*

10.

*Fin., L.L.C. v. Literski*, 1st Dist. Hamilton No. C-130404, 2014-Ohio-615, ¶ 19 ("The law is clear that the parol evidence rule cannot be circumvented by allegations of fraud, when the alleged fraudulent promises are directly contradicted by the signed writing.").

{¶ 22} To prevail on a claim of fraudulent inducement, a plaintiff must present clear and convincing proof of "(1) a representation (or concealment of a fact when there is a duty to disclose), (2) that is material to the transaction at hand, (3) made falsely, with knowledge of its falsity or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, and (4) with intent to mislead another into relying upon it, (5) justifiable reliance, and (6) resulting injury proximately caused by the reliance." (Internal citations and quotations omitted.) *BAS Broadcasting, Inc. v. Fifth Third Bank*, 2018-Ohio-1324, 110 N.E.3d 171, ¶ 16 (6th Dist.).

{¶ 23} To prevail on a claim for negligent misrepresentation, the plaintiff must show that (1) the defendant, in the course of his or her employment, or in a transaction in which he or she has a pecuniary interest; (2) supplied false information to others in their business transactions; (3) the plaintiff justifiably relied on the information; and (4) the defendant failed to exercise reasonable care or competence in obtaining or communicating the information. (Internal citations omitted.) *Cuspide Properties, Ltd. v. Earl Mechanical Servs.*, 2015-Ohio-5019, 53 N.E.3d 818, ¶ 58 (6th Dist.). A claim for negligent misrepresentation requires proof of an affirmative false statement. *Id*.

{¶ 24} Here, construing as true the material allegations in Shannak's complaint and drawing all reasonable inferences in his favor, we must conclude from the pleadings

11.

and the materials incorporated by reference or attached as exhibits to Shannak's complaint that he can prove no set of facts entitling him to relief. That is, Shannak alleges that he purchased a vehicle for "intended commercial use" from Yark, and Yark representatives told him that the GAP agreement "would, in the event of a total loss, insure not only the remaining balance of the vehicle loan but also pay off any comprehensive deductible." But, the clear and unambiguous terms of the GAP agreement—which is attached to the complaint—provide that it does not apply to vehicles that are used "for any commercial purpose." Thus, the GAP agreement directly contradicts the alleged representations of Yark representatives. Although Shannak alleges in conclusory fashion that he justifiably relied upon those representations, a plaintiff cannot claim to have justifiably relied on representations that contradict the terms of the written agreement. Accordingly, the complaint itself demonstrates that Shannak can prove no set of facts entitling him to relief. The trial court properly dismissed Shannak's claims under Civ.R. 12(C).

{¶ 25} We find Shannak's assignment of error not well-taken.

### III. Conclusion

{¶ 26} Even accepting as true that Yark representatives misrepresented to Shannak that the GAP agreement would provide coverage in the event of the total loss of his truck—which they knew Shannak would be using for commercial purposes—this representation directly contradicted the express terms of the GAP agreement, which contained a commercial vehicle exclusion. Shannak, therefore, cannot establish

12.

justifiable reliance, therefore, his claims for fraudulent inducement and negligent misrepresentation necessarily fail. Dismissal under Civ.R. 12(C) was properly granted to Yark. We find Shannak's sole assignment of error not well-taken.

{¶ 27} We affirm the February 1, 2021 judgment of the Lucas County Court of Common Pleas. Shannak is ordered to pay the costs of this appeal under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

_____
JUDGE

Christine E. Mayle, J.

Gene A. Zmuda, P.J.
CONCUR.

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.